**Certiorari Denied, No. 31,726, June 23, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-075**

**Filing Date:  May 11, 2009**

**Docket No. 27,402**

**STATE OF NEW MEXICO,**

>        **Plaintiff-Appellee,**

**v.**

**BRION LEE,**

>        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**     Defendant challenges his convictions for forgery and attempted fraud over $250 stemming from the same conduct as violative of double jeopardy.  We reverse Defendant's conviction for attempted fraud.

**BACKGROUND**

1

**{2}** Defendant was charged in October 2005 and, following a jury trial, was convicted of forgery in violation of NMSA 1978, Section 30-16-10 (1963) (amended 2006), and of attempted fraud over $250 in violation of NMSA 1978, Section 30-16-6 (1987) (amended 2006) and Section 30-28-1 (1963). At trial, the State presented evidence that on July 5, 2005, Defendant attempted to cash a $1000 check at the Bank of the Southwest (the Bank) in Roswell, New Mexico. According to the testimony of an employee of the Bank, Defendant drove up to the Bank's drive-up window and presented a check from Delton's Plumbing Company, Inc. made payable to "Nicklas Pina," along with a driver's license bearing Defendant's picture but with the name and signature of "Nicklas Pina." The employee noticed that the signature on the check did not match her recollection of the signature on file with the Bank for Delton's Plumbing. The employee asked her supervisor to pull the signature card for Delton's Plumbing and handed the check and driver's license to him. At that point, the supervisor noticed that it appeared the name on the license had been altered. The signature on the check was compared to the signature on the Bank's signature card, and they did not match. The supervisor told Defendant that someone from Delton's Plumbing was coming to verify the check, and he immediately drove away leaving the check and driver's license behind.

**{3}** Defendant's uncle and aunt own Delton's Plumbing and, up until April 2005, Defendant had "come and gone several times." Defendant's aunt told Detective Miguel Lopez that the person in the driver's license picture was her nephew. On that same day, she also noticed that about eight checks were missing from the business, including the one Defendant attempted to cash. Defendant's uncle testified at trial that he had not authorized issuance of the check that Defendant tried to cash. Defendant's aunt also testified at trial that she had not authorized issuance of the check that Defendant tried to cash. Defendant's cousin, the secretary and bookkeeper of Delton's Plumbing, who was also authorized to sign the business's checks, further testified at trial that she had not authorized issuance of the check that Defendant tried to cash. The jury found Defendant guilty of forgery and attempted fraud over $250.

**{4}** Before sentencing, Defendant moved to merge the forgery count and the attempted fraud over $250 count. He asserted that because passing the check was a single act and both convictions stemmed from the same unitary act, sentencing for both counts violated the double jeopardy clauses of the United States and New Mexico Constitutions. After a hearing on the motion, the district court determined that different acts were involved in presenting the check to try to get money for it and in forging the check with the intent to deceive or injure, and the court denied Defendant's motion. On appeal, Defendant challenges his forgery and attempted fraud convictions on double jeopardy grounds. We discuss the offenses in more detail in our double jeopardy analysis.

**DISCUSSION**

**{5}**     The United States Constitution and the New Mexico Constitution protect criminal defendants against multiple punishments for the same offense. U.S. Const. amends. V, XIV; N.M. Const. art. II, § 15; *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. Whether a defendant's convictions constitute multiple punishments for the same offense as barred by the double jeopardy clause "is a question of legislative intent, which we review de novo." *State v. Franco*, 2005-NMSC-013, ¶ 5, 137 N.M. 447, 112 P.3d 1104; *State v. Caldwell*, 2008-NMCA-049, ¶ 5, 143 N.M. 792, 182 P.3d 775, *cert. denied*, 2008-NMCERT-003, 143 N.M. 681, 180 P.3d 1180.

**Multiple Punishments**

**{6}**     We analyze this multiple punishment, double-description, double-jeopardy challenge pursuant to *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991). *Caldwell*, 2008-NMCA-049, ¶ 6; *State v. Schackow*, 2006-NMCA-123, ¶ 16, 140 N.M. 506, 143 P.3d 745.

**1.     Unitary Conduct**

**{7}**     First, we determine if Defendant's conduct underlying the offenses was unitary. *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. To make this determination, we evaluate "whether Defendant's acts are separated by sufficient indicia of distinctness," including any separation "in time and space, the quality and nature of the acts, and the objectives and results of the acts." *Schackow*, 2006-NMCA-123, ¶ 18 (internal quotation marks and citations omitted). "If sufficient indicia of distinctness exist and a defendant's behavior may be viewed as two distinct acts, the inquiry ends because double jeopardy does not bar multiple convictions when the conduct is non-unitary." *Caldwell*, 2008-NMCA-049, ¶ 7.

**{8}**     The State argues that the acts we are to consider are forgery of the check and attempted fraud by presenting the check to the Bank and argues that these were distinct acts because Defendant presented the check after it had already been forged. We disagree. The facts in this case appear to be similar to those in *Caldwell*, where the defendant presented a forged check to a retail store to be cashed, carried away the proceeds, and was charged with both forgery and fraud. *Id.* ¶ 9. This Court concluded that the defendant's convictions were based on "a discrete act, not separated by time or space, and not distinguishable based on the nature, quality, or result of the act, or [the d]efendant's objective in performing the act" and determined that the conduct was unitary. *Id.* We conclude that Defendant's conduct in this case was unitary. As we discuss in more detail later in this opinion, Defendant's forgery conviction was based on giving or delivering a check knowing it to have a false signature and with the intent to deceive the Bank. Defendant's attempted fraud conviction was based on his attempt to misrepresent the validity of the check to the Bank and with the intent to deceive the Bank. The convictions were based on the same conduct and constituted a single, discrete act. When the conduct is unitary, we continue the *Sawfford* analysis and determine if the Legislature intended multiple punishments for the unitary conduct. 112 N.M. at 14, 810 P.2d at 1234. We therefore turn to the second prong of the *Swafford* analysis. *See Caldwell*, 2008-NMCA-049, ¶ 9.

3

## 2.	Legislative Intent

**{9}**	"The sole limitation on multiple punishments is legislative intent." *Id.* ¶ 10 (internal quotation marks and citation omitted).  "Absent a clear expression of legislative intent, a court first must apply the *Blockburger* [*v. United States*, 284 U.S. 299 (1932),] test to the elements of each statute."  *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.  In applying the *Blockburger* test, this Court compares the elements of each crime with the elements of the other to determine whether the Legislature intended separate punishments under each statute. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.  If this test "establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id.*  However, "if we conclude that each statute requires proof of an element that the other does not, then a presumption arises that our [L]egislature intended for the conduct to result in separately punishable offenses." *Caldwell*, 2008-NMCA-049, ¶ 11.  That presumption, nevertheless, can be rebutted by other indicia of legislative intent such as language, history, subject of the statutes, and the quantum of punishment.  *Swafford*, 112 N.M. at 14-15, 810 P.2d at 1234-35.

## 3.	Applying the *Blockburger* Test

**{10}**	We see no clear expression of legislative intent as to imposing multiple punishments for forgery and attempted fraud.  *See Caldwell*, 2008-NMCA-049, ¶ 11 (stating that there are no clear legislative expressions in either the forgery or fraud statute as to whether to impose multiple punishments).  Therefore we apply the *Blockburger* test.  *Caldwell*, 2008-NMCA-049, ¶ 11.

**{11}**	The forgery offense contained in the criminal information filed against Defendant set out the elements of forgery contained in Section 30-16-10(A) and (B).  Subsection (A) proscribes "falsely making or altering any signature"; and Subsection (B) proscribes "issuing or transferring a forged writing."  In regard to the check, however, the jury was not instructed based on elements in Subsection (A).  The jury was instructed that for it to find Defendant guilty of forgery related to the check, the State was required to prove that "[t]he [D]efendant gave or delivered to [the] Bank . . . a check knowing it to have a false signature intending to injure, deceive or cheat [the] Bank."  This instruction contained only elements of Subsection (B) of the forgery statute, and Defendant was therefore found guilty and convicted only under Subsection (B) and only under the statutory element of "transferring" in that section.  Section 30-16-10(B).  Although the forgery statute provides for alternate ways of prosecuting forgery, when applying the *Blockburger* test to offenses, such as forgery, that may "be charged in alternate ways, we look only to the elements of the statute[] as charged to the jury and disregard the inapplicable statutory elements." *Caldwell*, 2008-NMCA-049, ¶ 13 (alteration in original) (internal quotation marks and citation omitted).

**{12}**	As to the attempted fraud charge, the jury was instructed that for it to find Defendant guilty of attempt to commit fraud over $250, it had to find that Defendant "began to do an act which constituted a substantial part of the crime of fraud over $250 but failed to commit

4

the crime." The jury was also instructed on what it must find as to fraud, namely, that "[t]he [D]efendant, by any words or conduct, misrepresented a fact to [the] Bank . . ., intending to deceive or cheat [the] Bank" and "[b]ecause of the misrepresentation and [the] Bank['s] . . . reliance on it, [D]efendant obtained $1000."

**{13}** While at first glance, it would appear that *Caldwell* controls this elements issue, on closer look we do not think *Caldwell* is controlling. In *Caldwell*, the defendant was convicted of forgery and fraud. *Id.* ¶ 1. To convict under the fraud statute, the prosecution had to prove a misappropriation of money, an element that is not required under the forgery statute. In the present case, the State did not have to prove that Defendant misappropriated something of value, only that he attempted to misappropriate something of value; that is, that he began to do an act which constituted a substantial part of the crime of fraud over $250, but failed to commit the crime. Thus, in comparing elements in the two crimes, each crime involved the elements of a false writing that Defendant handed to the Bank and the intent to cheat or deceive the Bank in order to obtain money from the Bank. The amount involved exceeded $250. Along with the fact that a check was involved, these were the essential facts and elements of both offenses that went to the jury.

**{14}** In this case, in order for the false-writing element of forgery to be met, the element of attempted fraud using a false writing was also necessarily met. *See Schackow*, 2006-NMCA-123, ¶ 23 (concluding that in order for the elements of assault with intent to commit criminal sexual penetration to be met, the elements of attempted criminal sexual penetration in the third degree must also necessarily be met). Thus, looking at the elements of the offenses as given to the jury, the forgery offense was subsumed within the attempted fraud offense. Where one offense is subsumed within another, "the inquiry is over and the statutes are the same for double jeopardy purposes." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

**{15}** We recognize that the attempted fraud offense as given to the jury contained an element not required in the forgery offense, namely, that the writing had a value over $250. However, we are hard pressed to determine that the $250 value element in the fraud offense is a sufficiently material element to preclude a conclusion that the forgery offense is subsumed within the attempted fraud offense. The primary elements of fraud are an intentional misappropriation or taking of anything of value. Section 30-16-6. Particular values are significant only for division of gravity from a petty misdemeanor ($100 or less) to a second degree felony (over $20,000). *See* § 30-16-6 (1987). We see no reasonable basis on which to figure the particular value into the double jeopardy analysis. *See Schackow*, 2006-NMCA-123, ¶ 21 (stating that "[i]n considering the elements of the offenses, we note that the enumeration of different aggravating factors . . . [do] not evince a legislative intent to authorize multiple punishments for the same act" (second alteration in original) (internal quotation marks and citation omitted)); *see also Santillanes*, 2001-NMSC-018, ¶ 48 (Minzner, J., dissenting) (stating that "[t]he existence of the greater-inclusive/lesser-included offenses is determined by the elements of offenses, not by the degree of felony").

**{16}** Forgery carries the greater punishment and attempted fraud carries the lesser punishment. When double jeopardy exists, the offense carrying the lesser punishment is to be vacated. *See Schackow*, 2006-NMCA-123, ¶ 25 (reading *Santillanes*, 2001-NMSC-018, ¶ 28, to require that the "lesser" offense in terms of the level of punishment be vacated). Therefore, Defendant's conviction for attempted fraud must be vacated.

**CONCLUSION**

**{17}** We hold that Defendant's convictions violated double jeopardy and reverse his attempted fraud conviction. We remand to the district court and instruct the court to vacate Defendant's conviction and sentence for attempted fraud.

**{18}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**LINDA M. VANZI, Judge**

Topic Index for *State v. Lee,* No. 27,402

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-FG | Forgery |
| CL-FR | Fraud |
| | |
| **ST** | **LEGISLATIVE INTENT** |
| ST-LI | Legislative Intent |