This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                                      **NO. 30,945**

**ANGELA MCGEE-GAYFORD,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

**{1}** Defendant Angela McGee-Gayford appeals from her convictions on two counts of unlawful means of obtaining a dangerous drug in violation of NMSA 1978, Section 26-1-22(B) (1972), and two counts of forgery in violation of NMSA 1978, Section 30-16-10(A) (2006). We conclude that Defendant's convictions for both unlawful means of obtaining a dangerous drug and forgery violate the prohibition against double jeopardy because the conduct underlying the two convictions was unitary, and the Legislature did not intend to punish the two crimes separately. We thus vacate Defendant's forgery convictions. We reject Defendant's other claims of error and affirm her convictions for unlawful means of obtaining a dangerous drug.

**BACKGROUND**

**{2}** Defendant was originally charged by criminal information with eight counts. Counts 1 and 2 charged Defendant with unlawful means of obtaining a dangerous drug, and Counts 3 through 8 charged Defendant with forgery by making or altering in violation of Section 30-16-10(A)(1). The State later filed a nolle prosequi with respect to Count 8 and an amended criminal information, which changed Counts 3 through 7 to charge forgery by making or altering in violation of Section 30-16-10(A)(1) *or* by issuing or transferring in violation of Section 30-16-10(A)(2).

{3} At trial, five prescriptions were admitted into evidence as relating to particular counts.[1]

- W-1, prescription for Vicodin and Xanax for Defendant presented to Walmart, related to Count 3;

- W-2, prescription for Adderall for Charles Jones presented to Walmart, related to Count 4;

- K-1, prescription for Vicodin for William Gayford presented to Kmart, related to Count 5;

- K-2, prescription for Adderall for Defendant presented to Kmart, related to Count 6; and

- K-3, prescription for Oxycodone for Defendant presented to Kmart, related to Count 7.

{4} The State presented the following evidence at trial. Tiffany Thrasher, a pharmacy technician, testified that she was working at the Walmart pharmacy on November 19, 2008, when two people, a man and a woman, dropped off two prescriptions purportedly signed by Dr. Jain, W-1 and W-2. The woman dropping off the prescriptions provided Thrasher with her driver's license that identified herself as Defendant. Thrasher wrote down Defendant's date of birth, driver's license number, and address on the back of the prescriptions. Thrasher was concerned about one of

---

[1] It does not appear that the court, in any specific instruction, tied any particular prescriptions to Counts 1 and 2. We see no basis on which to determine the existence of reversible instructional error as a result. Defendant supplies none.

3

the prescriptions, W-1, because it was unclear whether it authorized three or four refills. Thrasher telephoned Dr. Jain's office about the prescription and then spoke to her supervisor, who contacted the police.

{5}     Officer Franklin Shepherd testified that he was dispatched to the Walmart pharmacy on November 19, 2008, to respond to a questionable prescription. When he arrived at the pharmacy, Thrasher directed him to Defendant, who was waiting nearby for her prescriptions. Officer Shepherd approached Defendant and explained why he was there, and Defendant explained that the prescriptions were valid but misdated. Thrasher provided Officer Shepherd with two prescriptions, W-1 and W-2. Officer Shepherd arrested Defendant and advised her of her rights. Officer Shepherd later contacted other pharmacies in the area to see if they had been presented with prescriptions using the same or similar names. He learned that the Kmart pharmacy had received similar prescriptions.

{6}     Christina Markowich, a pharmacy technician, testified that she was working at the Kmart pharmacy on November 11, 2008, when "a lady" provided her with a prescription, K-2, which was purportedly signed by Dr. Jain. Markowich testified that the prescription "didn't look right" because the doctor's signature "was all wrong." Markowich showed the prescription to the pharmacist in charge, who called Dr. Jain's

office and confirmed that the prescription was not legitimate. Markowich testified that she did not recognize the prescriptions marked as K-1 and K-3.

{7}    William Mulberry, a pharmacist, testified that he was working at the Kmart pharmacy in November 2008, but did not recognize K-1, K-2, or K-3. He testified that the signatures on those prescriptions were not Dr. Jain's signature.

{8}    Dr. Pawan Jain testified that he treated Defendant from June 20, 2006, through October 3, 2008, and prescribed various medications to Defendant during that period of time. Dr. Jain last saw Defendant on August 4, 2008, when he provided her with three prescriptions, the last one dated October 3, 2008. Dr. Jain dismissed Defendant from his practice by letter dated October 3, 2008, due to her "non-compliancy with . . . medications[.]" Dr. Jain did not see Defendant as a patient after sending this letter, and prescribed no additional prescriptions.

{9}    Dr. Jain was shown the prescriptions identified as K-1, K-2, K-3, W-1, and W-2, and he testified that they were written on his prescription pad, but did not conform with how he writes prescriptions. He stated he was "100%" sure that the signatures on the five prescriptions were not his. He also testified that on certain prescriptions, the dosage was incorrect. Dr. Jain signed his name two times on a sheet of paper, which was admitted into evidence. On cross-examination, Dr. Jain testified that

5

Charles Jones was never his patient. He also testified that no one on his staff was authorized to sign his name on a prescription.

{10} At the close of the State's evidence, the district court granted Defendant's motion for a directed verdict as to Counts 3 through 5 on the theory of forgery by making or altering in violation of Section 30-16-10(A)(1). However, the district court found there was sufficient evidence as to Counts 3 through 5 to allow the forgery charges to go to the jury under the theory of issuing or transferring in violation of Section 30-16-10(A)(2). The jury was instructed accordingly. The jury asked a question during deliberations, which is not included in the record proper and was not read aloud for purposes of the transcript. It appears that the jury sought clarification regarding which prescription related to which count. The district court responded to the question by identifying on the written instructions which prescription related to which count.

{11} The jury found Defendant guilty of Counts 1, 2, 3, and 6, and not guilty of Counts 4 and 5. The jury hung on Count 7, and the court declared a mistrial as to that count. The district court sentenced Defendant to eighteen months on each count, enhanced by one year pursuant to the Habitual Offender Act. The district court ordered that Counts 1 and 2 run consecutively and Counts 3 and 6 run concurrent to Count 2. Judgment and sentence was entered on September 30, 2010.

{12} On October 13, 2010, Defendant filed a motion for a new trial based on newly discovered evidence. The district court denied Defendant's motion following a hearing. The district court concluded that the evidence proffered by Defendant was impeachment evidence that is not a basis for granting a motion for a new trial under existing case law.

**DISCUSSION**

{13} Defendant raises four issues on appeal.[2] First, she contends that her convictions on two counts arising out of her presentation of prescriptions to Walmart and on two counts arising out of her presentation of prescriptions to Kmart violated her right to be free from double jeopardy. Second, she contends the district court erred in constructively amending the information to charge forgery by issuing or transferring. Third, she contends the district court erred in denying her motion for a new trial based on newly discovered evidence. Fourth, she contends the evidence was insufficient to support her convictions. We consider each issue in turn.

**A.    Double Jeopardy**

---

[2] Defendant also raised an issue in regard to what she considers to have been fundamental error when "all the instructions *except* the instruction on Count 6 accurately struck the State's theory of making or altering." Defendant nevertheless conceded that no error existed with respect to the instruction relating to Count 6. We therefore do not consider that issue.

{14} Defendant contends her convictions violate the prohibition against double jeopardy because she cannot be convicted of both unlawfully obtaining a dangerous drug at Walmart (Count 1) and forgery based on issuing or transferring a prescription to Walmart (Count 3); and both unlawfully obtaining a dangerous drug at Kmart (Count 2) and forgery based on issuing or transferring a prescription to Kmart (Count 6). We review claims of double jeopardy de novo. *See State v. Quick*, 2009-NMSC-015, ¶ 6, 146 N.M. 80, 206 P.3d 985. Double jeopardy claims are not subject to waiver and can be raised at any time either before or after judgment. *See* NMSA 1978, § 30-1-10 (1963).

{15} The Double Jeopardy Clause of both the federal and state constitutions protects, among other things, against multiple punishments for the same offense. *See State v. Gallegos*, 2011-NMSC-027, ¶ 30, 149 N.M. 704, 254 P.3d 655. Where, as here, a defendant claims that she is charged with violations of multiple statutes based on the same conduct, the case is referred to as a double-description case. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. In analyzing a double-description case, we first consider "whether the conduct underlying the two convictions was unitary (the same conduct)." *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. If the conduct was unitary, we next consider whether the Legislature intended to punish the two crimes separately. *Id.*

8

**1.     Unitary Conduct**

{16}     In determining whether Defendant's conduct underlying Counts 1 and 3 and Counts 2 and 6 was unitary, we consider whether the actions that formed the basis of these counts were "separated by sufficient indicia of distinctness[.]" *Swafford v. State*, 1991-NMSC-043, ¶ 26, 112 N.M. 3, 810 P.2d 1223.  As our Supreme Court explained in *Swafford*, "If two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred), then it is a fairly simple task to distinguish the acts." *Id.* ¶ 28.

{17}     The actions that formed the basis of Counts 1 and 3 and Counts 2 and 6 are not separated by any indicia of distinctness; on the contrary, they appear to be the same, or at least potentially the same. Count 1 charged Defendant with unlawfully obtaining a dangerous drug at Walmart.  Count 3 charged Defendant with forgery based on issuing or transferring a prescription to Walmart. Count 1 did not identify the specific prescription on which it was based, and we thus must assume for constitutional purposes that the verdict could have been based on the same prescription that formed the basis for Count 3, which was W-1. *See State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140 (stating that "we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose

9

whether the jury relied on [the unconstitutional] alternative"), *abrogated on other grounds by State v. Frazier*, 2007-NMSC-032, ¶¶ 31-35, 142 N.M. 120, 164 P.3d 1; *see also State v. Fry*, 2006-NMSC-001, ¶ 70, 138 N.M. 700, 126 P.3d 516 (Bosson, J., concurring in part, dissenting in part) (recognizing that where the prosecution presents multiple theories supporting a guilty verdict, one of which would violate double jeopardy, and where the jury returns a general verdict of guilty but it is unclear which theory the verdict is based upon, constitutional double jeopardy concerns demand that the appellate courts assume that the general verdict violated double jeopardy). Similarly, Count 2 charged Defendant with unlawfully obtaining a dangerous drug at Kmart and Count 6 charged Defendant with forgery based on issuing or transferring a prescription to Kmart. Count 2 did not identify the specific prescription on which it was based, and we thus must assume for constitutional purposes that the verdict could have been based on the same prescription that formed the basis of Count 6, which was Exhibit K-2. *See Foster*, 1999-NMSC-007, ¶ 28.

**{18}** We conclude that the conduct supporting Counts 1 and 3 and Counts 2 and 6 was unitary. *See State v. Lee*, 2009-NMCA-075, ¶ 8, 146 N.M. 605, 213 P.3d 509 (concluding that the defendant's forgery conviction was based on giving or delivering a check to a bank and that his attempted fraud conviction was based on his attempt to misrepresent the validity of the same check to the bank, thereby determining that his

10

conduct was unitary). We thus proceed to consider whether the Legislature intended to separately punish the crimes of unlawfully obtaining a dangerous drug and forgery. *See Swick*, 2012-NMSC-018, ¶ 11.

**2.      Legislative Intent**

{19}      In analyzing legislative intent, "we look first to the language of the statutes at issue." *State v. Frazier*, 2007-NMSC-032, ¶ 21, 142 N.M. 120, 164 P.3d 1. The forgery statute, Section 30-16-10(A)(2), is silent as to whether the Legislature intended the conduct supporting this crime to be construed as unitary with the conduct supporting the crime of unlawful means of obtaining a dangerous drug. *See State v. Caldwell*, 2008-NMCA-049, ¶ 11, 143 N.M. 792, 182 P.3d 775 (noting that the forgery statute does not contain a clear legislative expression as to whether to impose multiple punishments). The converse is also true. That is, the unlawful means of obtaining a dangerous drug statute, § 26-1-22(B), is silent as to whether the Legislature intended the conduct supporting this crime to be construed as unitary with the conduct supporting the crime of forgery.

{20}      Because the statutes do not clearly prescribe multiple punishments, we apply the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 (1932). *See Swick*, 2012-NMSC-018, ¶ 11. Under *Blockburger*, we consider whether each statute requires proof of a fact that the other does not. *See Swick*, 2012-

11

NMSC-018, ¶ 12. "If the statute is vague and unspecific, or written in the alternative, [we] must consider the [prosecution's] legal theory in assessing whether each [statute] requires proof of a fact [that] the other does not." *Id.* (internal quotation marks and citation omitted).

{21} Defendant was convicted of violating Section 30-16-10(A)(2), which defines the crime of forgery as "knowingly issuing or transferring a forged writing with intent to injure or defraud." As we have explained, "[b]oth knowledge and intent are essential elements of forgery." *State v. Morales*, 2000-NMCA-046, ¶ 5, 129 N.M. 141, 2 P.3d 878. Defendant was also convicted of violating Section 26-1-22(B), which defines the crime as "obtain[ing] or attempt[ing] to obtain any dangerous drug . . . by forgery or alteration of a prescription or of any written order[.]" We read this statute to include a knowledge and intent requirement and note that the jury was instructed that it had to find that Defendant "acted intentionally when she committed the crime [of unlawful means of obtaining a dangerous drug]." *See State v. Gonzalez*, 2005-NMCA-031, ¶ 12, 137 N.M. 107, 107 P.3d 547 (recognizing that "[s]ince at least 1917, we have followed the common law that where an act is prohibited and punishable as a crime, it is construed as also requiring the existence of criminal intent").

{22} We agree with Defendant that, under the State's legal theory, the crime of forgery with which she was charged is subsumed within the crime of unlawful means of obtaining a dangerous drug. The State appears to argue that these two statutes have different elements because a person can be convicted of unlawful means of obtaining a dangerous drug if she obtains or attempts to obtain a dangerous drug either by forgery *or* by alteration. The State does not cite any authority supporting its argument that we should read forgery and alteration as distinct, and we are aware of no such authority. In any event, because the verdict form did not distinguish between forgery and alteration as a basis for the charge of obtaining a dangerous drug by unlawful means, we will not consider whether the act of forgery could be distinguished from the act of alteration. *See, e.g.*, *Foster*, 1999-NMSC-007, ¶ 28 (stating that the appellate courts must presume a double jeopardy violation where the jury is instructed on an alternative basis for the conviction that would result in double jeopardy). Where, as here, the *Blockburger* test "establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishments cannot be had for both." *Swafford*, 1991-NMSC-043, ¶ 30; *see, e.g.*, *Lee*, 2009-NMCA-075, ¶ 14 (concluding that the "forgery offense was subsumed within attempted fraud offense" because of the mutual false-writing element).

13

## 3. Remedy

**{23}** Our next step is to determine how to remedy the double jeopardy violation. As a general rule, "[w]hen double jeopardy exists, the offense carrying the lesser punishment is to be vacated." *Lee*, 2009-NMCA-075, ¶ 16. In the present case, Defendant's convictions for forgery and for unlawful means of obtaining a dangerous drug carry the same punishment, as both crimes are defined, on these facts, as fourth degree felonies. *See* § 30-16-10(B) (penalty for forgery when there is no quantifiable damage); NMSA 1978, § 26-1-26(A) (1987) (penalty for unlawful means of obtaining a dangerous drug). Defendant was sentenced to eighteen months on each count, enhanced by one year pursuant to the Habitual Offender Act. We note that the district court ordered that Defendant's sentences on Counts 1 and 2 run consecutively and that her sentences on Counts 3 and 6 run concurrent to Count 2. Thus, we vacate Defendant's convictions on Counts 3 and 6, which charged forgery based on issuing or transferring a prescription to Walmart and Kmart, respectively and which, under the circumstances here, are associated with a lighter punishment than that from Counts 1 and 2.

## B. Constructive Amendment of the Information

**{24}** Defendant contends the district court erred in allowing the State to amend the criminal information to charge forgery by making or altering in violation of Section

14

30-16-10(A)(1) *or* by issuing or transferring in violation of Section 30-16-10(A)(2). The State contends that Defendant did not preserve this issue. We do not decide whether this issue was preserved; nor do we consider the merits. This issue relates only to Counts 3 and 6, which we have already concluded must be vacated to remedy the double jeopardy violation, making the issue moot. *See, e.g.*, *State v. Garcia*, 2009-NMCA-107, ¶¶ 17, 24, 147 N.M. 150, 127 P.3d 1048 (noting that issue relating to a particular offense is moot where the Court already determined that the conviction for that offense must be vacated to remedy a double jeopardy violation).

**C.      Motion for a New Trial**

{25}      Defendant contends the district court erred in denying her motion for a new trial on the basis of newly discovered evidence. In support of her motion, Defendant stated that, after she was released from incarceration, she discovered various documents that called into question Dr. Jain's testimony at trial. These documents included a bill from Dr. Jain dated November 3, 2008, which reflects that Defendant was seen by Dr. Jain on November 3, 2008, and a printout showing that Charles Jones had filled prescriptions from Dr. Jain on November 14, 2008, and November 13, 2008. Dr. Jain testified at trial that he did not see Defendant as a patient after October 3, 2008, that he did not write any prescriptions for Defendant after that date, and that Charles Jones

15

was never his patient. The district court denied Defendant's motion because it concluded that it was based on impeachment evidence.

{26} Motions for a new trial based on newly discovered evidence are "not looked upon favorably" and are "not to be encouraged[.]" *State v. Shirley*, 1985-NMCA-120, ¶ 13, 103 N.M. 731, 713 P.2d 1. We will overturn an order denying such a motion only if "there has been a clear abuse of discretion." *Id.*

{27} In *State v. Volpato*, our Supreme Court explained that a motion for a new trial based on newly discovered evidence should be denied unless the evidences fulfills all of the following requirements:

> 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.

1985-NMSC-017, ¶ 7, 102 N.M. 383, 696 P.2d 471.

{28} Defendant does not dispute that her motion was based on impeachment evidence, but contends that the requirement from *Volpato* that the evidence not be merely impeaching or contradictory "is or should be limited to circumstances where the evidence does not impeach the prosecution's entire case." As an initial matter, we do not believe that the newly discovered evidence proffered by Defendant impeaches the prosecution's entire case. It does not affect the State's evidence that Defendant

16

presented prescriptions with forged signatures to Walmart and Kmart, attempting to obtain a dangerous drug thereby. In any event, Defendant does not cite any authority supporting her argument, and we are aware of none. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). We do not read this limitation into *Volpato* and are, of course, bound by that Supreme Court decision. *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175 (noting that the Court of Appeals is bound by Supreme Court precedent). Accordingly, we perceive no clear abuse of discretion in the district court's ruling and affirm the denial of Defendant's motion for a new trial.

**D. Sufficiency of the Evidence**

**{29}** Defendant contends the evidence was insufficient to support her convictions. We do not consider this argument with respect to Defendant's forgery convictions (Counts 3 and 6) because we have already concluded that those convictions must be vacated. We do, however, consider this argument with respect to Defendant's convictions for unlawful means of obtaining a dangerous drug (Counts 1 and 2).

**{30}** "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*,

2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted).

**1.     Count 1**

{31}     The jury was instructed that to find Defendant guilty of Count 1 it had to find that the State proved the following elements beyond a reasonable doubt: "(1) . . . [D]efendant attempted to obtain a dangerous drug from Walmart by a forged or altered prescription; [and] (2) [t]his happened in New Mexico on or about the 19th day of November[] 2008."

{32}     Defendant first contends the evidence was insufficient to support her conviction on Count 1 because there was no evidence that she knew the prescription she presented at Walmart was forged. In support of this argument, she relies upon *State v. Hermosillo*, 1975-NMCA-113, 88 N.M. 424, 540 P.2d 1313. In *Hermosillo*, there was uncontradicted testimony that the defendant "did not know that the checks were forged." *Id.* ¶ 6. Here, there was no such testimony. On the contrary, there was circumstantial evidence from which the jury could infer that Defendant knew the prescription, Exhibit W-1, was forged. *See State v. Montoya*, 1966-NMSC-224, ¶ 10, 77 N.M. 129, 419 P.2d 970 (recognizing that because knowledge "is personal in its

18

nature and may not be susceptible of proof by direct evidence[,]" it "may . . . be inferred from occurrences and circumstances").

{33} Dr. Jain testified that he did not see Defendant as a patient after October 3, 2008, and did not provide any prescriptions to Defendant dated after that date. Dr. Jain also testified that he was "100%" sure that the signatures on the prescriptions presented to Walmart (W-1 and W-2) were not his and that no one on his staff was authorized to sign for him. The pharmacy technician at Walmart was concerned about the validity of the prescriptions as soon as she received them because one of them appeared to authorize three or four refills. Perhaps most telling, Officer Shepherd testified that when he approached Defendant at Walmart to investigate the questionable prescriptions, Defendant immediately acknowledged that the prescriptions were misdated, but then stated that they were valid. We conclude that the State presented sufficient circumstantial evidence that Defendant knew the prescriptions she presented to Walmart were forged.

{34} Defendant also contends the evidence was insufficient to support her conviction on Count 1 because it is "impossible to determine whether the jury convicted Defendant on the basis of the McGee prescription [W-1] or the Jones prescription [W-2]." We agree with Defendant that it cannot be determined from the verdict form whether her conviction on Count 1 was based on W-1 or W-2, but we do not attribute

19

any significance to this fact. The evidence was essentially the same with respect to both prescriptions—both prescriptions were forged, and Defendant presented both prescriptions to the Walmart pharmacy on November 19, 2008, in an attempt to obtain dangerous drugs. We thus conclude that the evidence was sufficient to support Defendant's conviction on Count 1.

**2.    Count 2**

{35}    The jury was instructed that to find Defendant guilty of Count 2 it had to find that the State proved the following elements beyond a reasonable doubt: "(1) . . . [D]efendant attempted to obtain a dangerous drug from [Kmart] by a forged or altered prescription; [and] (2) [t]his happened in New Mexico on or about the 19th day of November[] 2008."

{36}    Defendant contends the evidence was insufficient to support her conviction on this count because there was no evidence that she presented any prescriptions to Kmart. She argues: "Certainly, for example, Charles Jones could have committed the Kmart crimes, or William Gayford could have submitted all three prescriptions, or some unidentified man or woman could have presented the prescriptions." We disagree. Christina Markowich, the pharmacy technician at Kmart on November 11, 2008, specifically identified K-2 and testified that "a lady" presented her with this prescription. K-2 was a prescription for Adderall for Defendant. In light of this

20

evidence, we conclude that the jury could reasonably infer that Defendant was the "lady" who presented this prescription, even though Markowich could not identify Defendant at trial. We thus conclude the evidence was sufficient to support Defendant's conviction on Count 2. *See Montoya*, 1966-NMSC-224, ¶ 10.

**CONCLUSION**

{37} For the reasons stated in this Opinion, we vacate Defendant's convictions for forgery (Counts 3 and 6). In all other respects, we affirm.

{38} **IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**


_____
**J. MILES HANISEE, Judge**