This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                                              **No. A-1-CA-35990**

**JUSTIN STONE ARCHULETA,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jennifer L. Attrep, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant Justin Stone Archuleta appeals his convictions for two counts of aggravated assault with a deadly weapon, in violation of NMSA 1978, Section 30-3-2(A) (1963), and one count of aggravated battery with a deadly weapon, in violation of NMSA 1978, Section 30-3-5(C) (1969), on several grounds. We conclude that Defendant's convictions for aggravated assault with a deadly weapon must be vacated because one count was not supported by substantial evidence and the other violated double jeopardy. We affirm Defendant's conviction for aggravated battery.

### BACKGROUND

**{2}**     Defendant's convictions arise out of an altercation he had with his cousins, Isaiah and Isaac Archuleta, at their house. The following facts are pieced together from the trial testimony of Isaiah and Isaac, as well as that of Arlene and Terry Garcia, their aunt and mother, respectively. Defendant and Isaac got into an argument late one night when Defendant refused to go to sleep. Defendant escalated the argument into a physical fight by swinging at Isaac and pulling him to the floor in the hallway. Defendant then pinned Isaac down and began "thr[owing] some punches." At that point, Isaiah tried to pull Defendant off Isaac. When he could not pull Defendant off Isaac, Isaiah ran to the fireplace, picked up a foot-long piece of railroad tie, and threw it at Defendant's head. After Isaiah hit Defendant with the railroad tie, Defendant went into one of the bedrooms and retrieved a hi-hat[1] from a drum kit. Defendant returned from the bedroom and started swinging the hi-hat at Isaiah, striking him once on the arm. When Defendant hit Isaiah with the hi-hat, Isaiah told Isaac to get a rifle to help stop the fight. As Isaiah was retreating into the kitchen, Defendant threw the hi-hat at Isaiah, although the hi-hat did not hit him. The altercation then moved into the kitchen, where Isaac pulled out a rifle and told Defendant to "get the f--- out of my house." Defendant left the house and the altercation ended.

**{3}**     After listening to the testimony, the jury convicted Defendant of two counts of aggravated assault with a deadly weapon for swinging the hi-hat at Isaiah and Isaac and one count of aggravated battery with a deadly weapon for hitting Isaiah with the hi-hat. Defendant now appeals.

**DISCUSSION**

**{4}**     Defendant appeals his convictions on several grounds. First, Defendant claims that the district court committed fundamental error in failing to instruct the jury on self-defense. Second, Defendant argues that trial counsel was ineffective for failing to request an instruction on self-defense. Third, Defendant argues there was insufficient evidence of the charge for aggravated assault against Isaac. Last, Defendant contends that his convictions for aggravated assault and aggravated battery of Isaiah violate double jeopardy. We address each argument in turn.

**I.     Defendant Was Not Entitled to an Instruction on Self-Defense**

**{5}**     Defendant argues that the district court committed fundamental error by failing to instruct the jury sua sponte that Defendant had the right to use self-defense.  "The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. Because Defendant did not preserve any error with respect to instructing the jury on self-defense, we review only for fundamental error. *See* Rule 12-321(B)(2) NMRA (providing appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights). We will not reverse for fundamental error unless the error results in a conviction that is "so doubtful that it

---

1A "hi-hat" is a pair of cymbals mounted on a metal stand with a foot pedal. See *Hi-hat*, Wikipedia, https://en.wikipedia.org/wiki/Hi-hat (last visited June 28, 2019).

would shock the judicial conscience to allow the conviction to stand." *State v. Simmons*, 2018-NMCA-015, ¶ 9, 409 P.3d 1030 (internal quotation marks and citation omitted).

**{6}** In order to determine whether failing to instruct the jury on self-defense constitutes fundamental error, we must first determine whether Defendant would have been entitled to the instruction had he requested it. *See State v. Barber*, 2004-NMSC-019, ¶ 9, 135 N.M. 621, 92 P.3d 633 (stating that, in a fundamental error analysis for failure to give a jury instruction, the first question is whether the defendant would have been entitled to the instruction had he requested it). Defendant does not dispute that he was the initial aggressor. While Defendant acknowledges that an initial aggressor generally cannot claim self-defense, he argues that he regained his right to use self-defense when Isaiah threw the piece of railroad tie at him, escalating the fight with deadly force. *See State v. Lucero*, 1998-NMSC-044, ¶ 7, 126 N.M. 552, 972 P.2d 1143 ("Self defense is not available to the defendant if he or she started the fight unless: 1. The defendant was using force which would not ordinarily create a substantial risk of death or great bodily harm; and 2. victim responded with force which would ordinarily create a substantial risk of death or great bodily harm[.]" (alterations, internal quotation marks, and citation omitted)). Defendant also argues that he was entitled to use self-defense under a multiple assailant theory after Isaac retrieved the rifle. *See State v. Sandoval*, 2011-NMSC-022, ¶ 18, 150 N.M. 224, 258 P.3d 1016 ("A multiple assailant defense instruction should be issued when more than one assailant is involved in creating an immediate danger of death or great bodily harm toward the defendant."). However, even assuming, arguendo, that Defendant regained his right to use self-defense despite being the initial aggressor, we fail to see how Defendant was entitled to a self-defense instruction.

**{7}** "A defendant is only entitled to jury instructions on a self-defense theory if there is evidence presented to support every element of that theory." *State v. Baroz*, 2017-NMSC-030, ¶ 14, 404 P.3d 769. For Defendant to be entitled to a non-deadly force self-defense instruction, he was required to present evidence supporting each of the following elements:

> 1. There was an appearance of immediate danger of bodily harm to [D]efendant as a result of [Isaiah and Isaac's actions]; and
>
> 2. [D]efendant was in fact put in fear of immediate bodily harm and [swung the hi-hat at Isaiah and Isaac] because of that fear; and
>
> 3. [D]efendant used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and
>
> . . . .
>
> [4]. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.

UJI 14-5181 NMRA (2009).

**{8}** Viewing the evidence in the light most favorable to Defendant, no reasonable jury could have found that, *at the time that Defendant swung the hi-hat*, there was "an appearance of immediate danger of bodily harm," that the force used by Defendant was "reasonable and necessary," or that a reasonable person in the same circumstances would have acted as Defendant did. UJI 14-5181; *see State v. Rudolfo*, 2008-NMSC-036, ¶ 18, 144 N.M. 305, 187 P.3d 170 ("It is important to view the circumstances at the time the . . . force was used by the defendant and not at some earlier point.").

**{9}** At the point in time that Defendant emerged from the bedroom with the hi-hat, there was no evidence that his cousins were doing anything other than trying to stop the fight that Defendant instigated. While Isaiah threw a piece of railroad tie at Defendant when he had Isaac pinned down, he testified that he only did this when he could not pull Defendant off of Isaac, and there was no evidence that Isaiah was going to use the railroad tie again or continue the fight. Nor was there evidence that Isaiah or Isaac were pursuing Defendant when he retrieved the hi-hat from the bedroom. To the contrary, by all accounts, Defendant remained the aggressor by chasing Isaiah and throwing the hi-hat at him after retrieving the hi-hat from the bedroom. Thus, Defendant's actions after being hit with the railroad tie appear to have been motivated by revenge against Isaiah, rather than self-defense. *Cf. State v. Pruett*, 1918-NMSC-062, ¶ 9, 24 N.M. 68, 172 P. 1044 (affirming the district court's use of a jury instruction containing the "familiar and oft-approved statement that the law of self-defense does not imply the right to attack, nor will it permit acts done in retaliation [or] revenge").

**{10}** Additionally, contrary to Defendant's assertions, the evidence did not demonstrate that Isaiah and Isaac were multiple assailants but rather multiple victims defending against one assailant's attacks. Further, the evidence indicates that Isaac got the rifle *after* Defendant started chasing Isaiah with the hi-hat. And, when Isaac pulled out the rifle, the evidence suggests that he only used it for defensive purposes, telling Defendant to "get the f--- out of my house." Therefore, Defendant's use of the hi-hat could not have been justified by Isaac's possession of a rifle. *Cf. State v. Coffin*, 1999-NMSC-038, ¶ 12, 128 N.M. 192, 991 P.2d 477 ("While it is true that a person may act in self-defense against multiple attackers acting in concert, this principle applies only to the extent that each accomplice poses an immediate danger of death or great bodily harm, thereby necessitating an act of self-defense.").

**{11}** We conclude that because Defendant was not entitled to an instruction on self-defense, the district court did not commit fundamental error by failing to give the instruction sua sponte. Defendant's arguments, which do not focus on the point in time in which Defendant used the hi-hat, are inapposite.

## II. Defendant Failed to Establish a Prima Facie Case of Ineffective Assistance of Counsel

**{12}** Defendant claims that his trial counsel was ineffective in failing to request a self-defense instruction. "We review claims of ineffective assistance of counsel de novo." *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "Because [the d]efendant raises the issue for the first time on appeal, he must establish a prima facie case for ineffective assistance in order for this Court to remand the matter to the [district] court for an evidentiary hearing." *State v. Aragon*, 2009-NMCA-102, ¶ 8, 147 N.M. 26, 216 P.3d 276. "A prima facie case of ineffective assistance of counsel requires that a defendant establish that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Cordova*, 2014-NMCA-081, ¶ 9 (internal quotation marks and citation omitted).

**{13}** Because we have concluded that Defendant was not entitled to a self-defense instruction, we cannot characterize his trial counsel's failure to request the instruction as deficient or irrational. Nor could Defendant's defense be prejudiced by trial counsel's failure to request an instruction to which Defendant was not entitled. Accordingly, we hold that Defendant has not demonstrated that his counsel was ineffective. *See State v. Hilliard*, 1988-NMCA-066, ¶ 8, 107 N.M. 506, 760 P.2d 799 (holding that trial counsel's failure to request an instruction that to which the defendant was not entitled "did not result in ineffective assistance of counsel").

### III. Defendant's Conviction for Aggravated Assault of Isaac With a Deadly Weapon Was Not Supported by Substantial Evidence

**{14}** Defendant next challenges the sufficiency of the evidence for his conviction of aggravated assault of Isaac with a deadly weapon. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "[O]ur role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the state, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 (internal quotation marks and citation omitted).

**{15}** Defendant argues that the evidence did not support his conviction for aggravated assault of Isaac with a deadly weapon because there was no evidence that he tried or intended to apply force to Isaac with the hi-hat. We agree. New Mexico defines assault, in relevant part, as: "A. an attempt to commit a battery upon the person of another; [or]

B. any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery[.]" NMSA 1978, § 30-3-1 (1963). "The offense is aggravated when, as in this case, it is committed with a deadly weapon." *State v. Branch*, 2018-NMCA-031, ¶ 12, 417 P.3d 1141 (citing NMSA 1978, § 30-3-2(A) (1963)). Here, the district court granted the State's request to instruct the jury that, in order to find Defendant guilty of aggravated assault with a deadly weapon of Isaac, it had to find beyond a reasonable doubt that:

1. [D]efendant tried to touch or apply force to Isaac . . . by swinging a hi-hat at Isaac . . .;

2. [D]efendant acted in a rude, insolent or angry manner;

3. [D]efendant used a hi-hat[; and;]

4. [D]efendant intended to touch or apply force to Isaac[.]"

*See* UJI 14-304 NMRA (2000).

**{16}** Defendant contends that there was no evidence to support the first or fourth elements of the aggravated assault conviction because all of the witnesses testified that he was focused on Isaiah, not Isaac, when he was swinging the hi-hat. The State, in turn, argues that it did not have to prove that Defendant intended to assault Isaac, but only that he committed an unlawful act, which caused Isaac to reasonably believe he was in danger of receiving an immediate battery. In support of its argument, the State cites *State v. Manus*, where our Supreme Court held that

[t]he [s]tate was not required to prove that [the d]efendant intended to assault [the bystander victim], but only that he did an unlawful act which caused [the bystander victim] to reasonably believe that she was in danger of receiving an immediate battery, that the act was done with a deadly weapon, and that it was done with a general criminal intent.

1979-NMSC-035, ¶ 14, 93 N.M. 95, 597 P.2d 280, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, 98 N.M. 786, 653 P.2d 162. Additionally, the State cites *State v. Branch*, 2018-NMCA-031, ¶ 18, 417 P.3d 1141, for the proposition that liability for assault "is only limited by the requisite mental state of conscious wrongdoing and by the requirement that the victim's fear must be reasonable."

**{17}** However, as Defendant correctly points out, both of these cases dealt with an alternative type of assault the State did not pursue in this case. In *Manus* and *Branch*, the state pursued aggravated assault convictions based on the "menacing conduct" type of assault listed in Section 30-3-1(B). *See Manus*, 1979-NMSC-035, ¶ 14 (discussing only the elements of the "menacing conduct" type of assault contained in Section 30-3-1(B)); *see also Branch*, 2018-NMCA-031, ¶ 18 (stating that "[t]he expansive application of assault in *Manus* controls our construction of Section 30-3-1(B)). By contrast, the

district court in this case submitted a jury instruction modelled after UJI 14-304, which only addresses the "attempted battery" type of assault described in Section 30-3-1(A). *Compare* UJI 14-304 (titled "Aggravated assault; *attempted battery with a deadly weapon*; essential elements" (emphasis added)), *with* UJI 14-305 NMRA (titled "Aggravated assault; *threat or menacing conduct with a deadly weapon*; essential elements (emphasis added)), *and* UJI 14-306 NMRA (1998)[2] (titled "Aggravated assault; *attempted battery*; *threat or menacing conduct with a deadly weapon*; essential elements" (emphasis added)); *see also* UJI 14-306 use note 1 ("This instruction sets forth the elements of two of the types of assault in Section 30-3-1 . . .; one type involves attempted battery and the other involves a threat or menacing conduct which causes another to reasonably believe he is about to be struck. If the evidence supports both of these theories of assault, use this instruction."). Thus, *Manus* and *Branch* are not controlling. Instead, the instructions submitted to the jury became the law of the case, and the state was required to prove all of the elements of aggravated assault with a deadly weapon premised on an "attempted battery" assault rather than a "menacing conduct" assault. *See State v. Duttle*, 2017-NMCA-001, ¶ 18, 387 P.3d 885 ("[T]he jury instructions are the law of the case against which the sufficiency of the evidence supporting the jury's verdict is to be measured.").

**{18}** The State does not argue that there was any evidence to support these elements, and we find none. While Isaac testified that he was "scared for [his] life" and thought he would get hit with the hi-hat because Defendant was swinging the hi-hat within close proximity to him, he did not testify that Defendant attempted to hit him with the hi-hat. To the contrary, when asked by the prosecutor who Defendant was swinging the hi-hat at, Isaac responded, "my brother." Nor did any of the other witnesses testify that Defendant tried to hit Isaac with the hi-hat. Isaiah testified that, after he hit Defendant with the railroad tie, Defendant "focused his attention on [him]" and "started swinging [the hi-hat] at [him]." Terry and Arlene similarly testified that they saw Defendant chasing Isaiah with the hi-hat. While Isaac's fear of receiving an immediate battery might have been sufficient to sustain a conviction for aggravated assault premised on the "menacing conduct" type of assault contained in Section 30-3-1(B), the district court did not instruct the jury on that type of assault. Isaac's fear, however reasonable, cannot substitute for the lack of evidence of the essential elements of aggravated assault as submitted to the jury. *State v. Jimenez*, 2017-NMCA-039, ¶ 27, 392 P.3d 668 ("[W]here a statute provides distinct and alternative offenses and the state chooses to charge under only a particular part of the statute, the prosecution is limited to proving what it has charged. Additionally, in order to convict, the state must present sufficient evidence of guilt beyond a reasonable doubt with respect to every element essential to a conviction." (emphasis, internal quotation marks, and citations omitted)). Without any evidence that Defendant tried or intended to hit Isaac with the hi-hat, we conclude that there was insufficient evidence to support Defendant's conviction for aggravated assault on Isaac with a deadly weapon.

## IV. Defendant's Convictions for Aggravated Assault and Aggravated Battery of Isaiah With a Deadly Weapon Violate Double Jeopardy

---

2UJI 14-306 was amended and renumbered as UJI 14-303 NMRA in 2016 after Defendant's trial.

**{19}** Finally, Defendant argues, and the State concedes, that his convictions for aggravated assault and aggravated battery of Isaiah with a deadly weapon violate double jeopardy. While we are not bound to accept the State's concession, we agree that Defendant's conviction for aggravated assault with a deadly weapon must be vacated. *See State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738 (stating appellate courts are not bound by the state's concessions).

**{20}** Double jeopardy protects against multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. Whether separate convictions violate double jeopardy is "a question of law, which we review de novo." *State v. Montoya*, 2013-NMSC-020, ¶ 22, 306 P.3d 426 (internal quotation marks and citation omitted). We apply the two-part test set forth in *Swafford* to determine whether Defendant's convictions for aggravated assault and aggravated battery violate double jeopardy. *See Swafford*, 1991-NMSC-043, ¶ 25. First, we must determine "whether the conduct underlying the offenses is unitary." *Id.* Conduct is not unitary if sufficient "indicia of distinctness" separate the illegal acts. *Id.* ¶ 26. If the conduct is unitary, we then "focus[] on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* ¶ 25. "Absent a clear expression of legislative intent [to provide for multiple punishments], a court . . . must apply the *Blockburger* test to the elements of each statute. If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 1991-NMSC-043, ¶ 30. "Under *Blockburger*, the test to be applied to determine whether there are two offenses or only one[] is whether each provision requires proof of a fact which the other does not." *State v. Swick*, 2012-NMSC-018, ¶ 12, 279 P.3d 747 (internal quotation marks and citation omitted). "In New Mexico, we apply [the] *Blockburger* test to not only the defining statutes in the abstract but also to the [s]tate's theory of the particular case[.]" *State v. Torres*, 2018-NMSC-013, ¶ 25, 413 P.3d 467. We assess the State's theory of the case by "considering such resources as the evidence, the charging documents, and the jury instructions." *State v. Montoya*, 2013-NMSC-020, ¶ 49, 306 P.3d 426. "When applying the *Blockburger* test to offenses that may be charged in alternate ways, we look only to the elements of the statute as charged to the jury and disregard the inapplicable statutory elements." *State v. Caldwell*, 2008-NMCA-049, ¶ 13, 143 N.M. 792, 182 P.3d 775 (omission, alteration, internal quotation marks, and citation omitted).

**{21}** With respect to the first part of the *Swafford* test, we fail to see "sufficient indicia of distinctness" between the conduct underlying Defendant's convictions for aggravated assault and aggravated battery. *Swafford*, 1991-NMSC-043, ¶ 26. Both charges arose out of conduct that took place during the same altercation. There was no intervening event between Defendant's act of swinging the hi-hat at Isaiah and hitting Isaiah with the hi-hat. *See State v. Comitz*, 2019-NMSC-011, ¶ 39, ___ P.3d___ (stating that courts look "for an event that intervened between the crimes at issue, distinguishing the crimes from one another." (internal quotation marks and citation omitted)). Defendant's actions were of the same violent nature, aimed at one victim, and served a single purpose (i.e., to injure Isaiah). Thus, we conclude that the conduct underlying both charges was

unitary. *See State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616 ("Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished.").

**{22}** We now turn to the second part of the *Swafford* test to determine whether the Legislature intended to make aggravated assault and aggravated battery, as charged in this case, separately punishable offenses. Finding no clear expression of the Legislature's intent to punish the two crimes separately, we apply the *Blockburger* test to the elements of aggravated assault and aggravated battery. *See Swafford*, 1991-NMSC-043, ¶ 30. Aggravated assault consists of "unlawfully assaulting or striking at another with a deadly weapon." Section 30-3-2(A). Aggravated battery, on the other hand, consists of "the unlawful touching or application of force to the person of another with intent to injure that person or another." Section 30-3-5(A). With respect to the aggravated assault charge, the district court instructed the jury that, in order to find Defendant guilty, the jury had to find that:

1. [D]efendant *tried* to touch or apply force to Isaiah . . . by swinging a hi-hat at Isaiah . . . ;

2. [D]efendant acted in a rude, insolent or angry manner;

3. [D]efendant used a hi-hat[; and]

4. [D]efendant *intended* to touch or apply force to Isaiah[.]"

(Emphasis added.) As discussed earlier, this instruction is modelled after UJI 14-304, which deals with the "attempted battery" type of assault. Thus, the aggravated assault offense was subsumed within the aggravated battery offense because Defendant could not have committed aggravated battery on Isaiah without also attempting to batter him. *Cf. State v. Lee*, 2009-NMCA-075, ¶ 14, 146 N.M. 605, 213 P.3d 509 (concluding that the material elements of attempted fraud were subsumed within the crime of forgery because "in order for the false-writing element of forgery to be met, the element of attempted fraud using a false writing was also necessarily met"). Therefore, Defendant's conviction for both crimes violates double jeopardy.[3] Because aggravated assault is the lesser offense, we vacate Defendant's conviction for that charge. *See State v. Santillanes*, 2001-NMSC-018, ¶¶ 6, 28, 130 N.M. 464, 27 P.3d 456 (stating that "the general rule requires that the lesser offense be vacated" (internal quotation marks and citation omitted)). *Compare* § 30-3-5(C) (providing that "[w]hoever commits aggravated battery . . . with a deadly weapon . . . is guilty of a third degree felony"), *with* § 30-3-2 (providing that that "[w]hoever commits aggravated assault is guilty of a fourth degree felony")

---

3The district court merged Defendant's convictions for aggravated assault and battery for sentencing purposes. Nonetheless, merging the offenses for sentencing purposes does not cure the double jeopardy violation. *See State v. Vallejos*, 2000-NMCA-075, ¶ 27, 129 N.M. 424, 9 P.3d 668 (stating that "double jeopardy resulting from multiple convictions for the same offense is not cured by the merger of the offenses for sentencing purposes").

**CONCLUSION**

**{23}** For the foregoing reasons, we vacate Defendant's convictions for aggravated assault of Isaiah and Isaac with a deadly weapon and affirm Defendant's conviction for aggravated battery with a deadly weapon. We therefore remand to the district court to vacate Defendant's convictions for aggravated assault and resentence Defendant accordingly.

**{24}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**ZACHARY A. IVES, Judge**