# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>January 23, 2018</u>

**A-1-CA-34709**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

**v.**

**GAVINO LUNA,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}     The formal opinion filed in this case on December 13, 2017, is hereby withdrawn, and this opinion is substituted in its place.

{2}     Defendant Gavino Luna was convicted by a jury of (1) criminal sexual contact of a minor (Child under 13) (CSCM) in the third degree, (2) intimidation of a witness, (3) unlawful exhibition of motion pictures to a minor, and (4) contributing to the delinquency of a minor (CDM) for forcing a minor to "engage in sexual acts and watch pornographic movies[.]" He was sentenced to eleven-and-one-half years' incarceration, less one day, to be followed by parole for five years to life. Defendant appeals his convictions, challenging: (1) his right to be free from double jeopardy, (2) the adequacy of two jury instructions given, (3) the sufficiency of the evidence supporting his convictions, (4) the admission of certain lay testimony, and (5) the admission of specific expert testimony. We affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

{3}     Defendant's convictions stem from events that occurred the afternoon of May 3, 2013, when Defendant was looking after J.C. (Child), a nine-year-old boy, and Child's twelve-year-old sister because Child's mother was hospitalized. Defendant

lived with Child's grandmother. According to Child, Defendant showed Child "ugly" movies that showed photographs of women "showing themselves." Child could not recall details of the movie, such as what the women in the movie were doing, but he explained that the women in the movie were wearing "red" clothes "like . . . you wear outside" and that they kept their clothing on. There were no other people in the pictures with the women. Child did not like the movies because he found them "very ugly" because they "showed . . . all of [the] parts . . . of the women." Child did not want to look at the photos and movies and tried to leave the room but was not allowed; Child thought that if he ran, Defendant would get mad.

{4}     Child also testified that at one point, Defendant pulled down Defendant's shorts and showed Child his "parts," which Child explained meant Defendant's penis. Child could not recall whether Defendant made Child touch any of Defendant's "parts," but he remembered that Defendant touched Child's penis two times: once with his hand, and once with his mouth. The contact occurred over Child's clothing and was not skin-to-skin. This made Child feel "very bad[]."

{5}     Defendant told Child not to tell anyone and that he would take Child far away and leave Child there if Child told anyone. Child was afraid of Defendant and approximately one week after the incident told his mother what happened. Child's mother contacted the Deming, New Mexico Police Department, and Defendant was

subsequently charged with and tried for criminal sexual penetration of a minor (CSPM) in the first degree, CSCM, intimidation of a witness, CDM, and unlawful exhibition of motion pictures to a minor. The district court granted Defendant's motion for a directed verdict on the CSPM charge based on a lack of sufficient evidence to support the charge but allowed all other counts to go to the jury. The jury convicted Defendant on all submitted counts, after which the district court entered judgment and sentenced Defendant. This appeal followed.

**DISCUSSION**

{6} Defendant makes the following challenges on appeal: (1) Defendant's convictions for CSCM, unlawful exhibition, and CDM violate his Fifth Amendment right to be free from double jeopardy; (2) the district court fundamentally erred in instructing the jury as to the elements of unlawful exhibition of motion pictures to a minor and CSCM; (3) there was insufficient evidence to support Defendant's convictions for unlawful exhibition of motion pictures, CDM, and intimidation of a witness; (4) the district court committed plain error in admitting the lay testimony of Detective Sergio Lara, the investigating officer, who testified that he recovered a "pornographic" video from Defendant's house; and (5) the district court committed plain error in admitting the expert testimony of Sylvia Aldaz-Osborn, a forensic

interviewer who was allowed to watch and comment on Child's videotaped deposition when it was shown to the jury during trial. We address each issue in turn.

**I.     Whether Defendant's Convictions for CDM, CSCM, and Unlawful Exhibition of Motion Pictures to a Minor Violate His Right to Be Free From Double Jeopardy**

{7}     Defendant contends that the sentence imposed by the district court violates his Fifth Amendment right to be free from double jeopardy because the conduct underlying his CDM conviction is identical to that used as the basis for his CSCM and unlawful exhibition of motion pictures convictions. Defendant argues that the CDM statute is generic and multipurpose, requiring us to analyze his claim using the modified *Blockburger* approach articulated in *State v. Gutierrez*, 2011-NMSC-024, ¶ 58, 150 N.M. 232, 258 P.3d 1024 . Such approach, Defendant argues, leads to the conclusion that the Legislature did not intend to punish separately Defendant's unitary conduct as specifically charged and argued by the State. The State contends that the CDM statute, while broad in scope, is not "unacceptably vague" and, therefore, we need not follow *Gutierrez*'s modified *Blockburger* approach. Thus, the State urges us to apply *Blockburger*'s strict elements test that was used in *State v. Trevino*, 1993-NMSC-067, 116 N.M. 528, 865 P.2d 1172, a pre-*Gutierrez* case holding that there was no double jeopardy violation for CDM and CSCM convictions. The State argues that *Trevino* should continue to control. We disagree. Under the

4

current state of the law, we agree with Defendant that *Gutierrez* is now controlling, and we reverse his CDM conviction.

**A.     The *Blockburger* Test**

{8}     The Double Jeopardy Clause of the Fifth Amendment, made applicable to New Mexico by incorporation through the Fourteenth Amendment, "functions in part to protect a criminal defendant against multiple punishments for the same offense." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747 (internal quotation marks and citation omitted). Cases "where the same conduct results in multiple convictions under different statutes" are known as double description cases. *Id.* In a double description case, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. We first ask "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.* Here, the State does not dispute that the same conduct—Defendant's sexual contact of and exhibition of "pornographic" movies to Child—formed the basis of his CDM, CSCM, and unlawful exhibition convictions. Thus, we turn to the second part of the *Swafford* test and focus "on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.*

{9}     Our Supreme Court has described legislative intent as "the touchstone of our inquiry" because in this context "[i]t is well established that the Double Jeopardy

Clause does no more than prevent the sentencing court from prescribing greater punishment than the [L]egislature intended." *Gutierrez*, 2011-NMSC-024, ¶ 50 (internal quotation marks and citations omitted). Unless the Legislature has clearly and expressly authorized multiple punishments for the same conduct, we apply the following test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine intent: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one[] is whether each provision requires proof of a fact which the other does not." *Id.* As our Supreme Court explained in *Swafford*:

> The rationale underlying the *Blockburger* test is that if each statute requires an element of proof not required by the other, it may be inferred that the [L]egislature intended to authorize separate application of each statute. Conversely, if proving violation of one statute always proves a violation of another (one statute is a lesser included offense of another, i.e., it shares all of its elements with another), then it would appear the [L]egislature was creating alternative bases for prosecution, but only a single offense.

*Swafford*, 1991-NMSC-043, ¶ 12. Importantly, *Swafford* explained that "the *Blockburger* test is not a constitutional rule, but merely a canon of construction used to guide courts in deciphering legislative intent." *Id.* It, therefore, follows that the starting point in a *Blockburger* analysis—looking to the statute's language itself—is consistent with the general rule of statutory construction that "[i]n analyzing legislative intent, [courts] first look to the language of the statute itself." *Swick*, 2012-

6

NMSC-018, ¶ 11; *see State v. Suazo*, 2017-NMSC-011, ¶ 16, 390 P.3d 674 (explaining that courts "begin with the plain language of the statute, which is the primary indicator of legislative intent." (alteration, internal quotation marks, and citation omitted)). It also follows that where the plain language of the statute is ambiguous, we engage in further interpretation in order to glean legislative intent. *See State v. Almeida*, 2011-NMCA-050, ¶ 11, 149 N.M. 651, 253 P.3d 941 ("[I]f a statute is vague or ambiguous and cannot be interpreted by a simple consideration of the statutory language, the court must look to other means of statutory interpretation.").

{10} Historically, courts applied the *Blockburger* test by strictly comparing the elements—evidenced by a statute's plain language—of the challenged statutes. *State v. Lee*, 2009-NMCA-075, ¶ 9, 146 N.M. 605, 213 P.3d 509 ("In applying the *Blockburger* test, this Court compares the elements of each crime with the elements of the other."). However, in response to "the increasing volume, complexity, vagueness and overlapping nature of criminal statutes[,]" the United States Supreme Court modified the *Blockburger* analysis to account for the challenges to divining legislative intent presented by multipurpose statutes that could be offended in multiple ways and address various types of wrongs. *Pandelli v. United States*, 635 F.2d 533, 535-39 (6th Cir. 1980) (explaining the evolution of the *Blockburger* test that occurred in *Whalen v. United States*, 445 U.S. 684 (1980), and *Illinois v. Vitale*,

7

447 U.S. 410 (1980)). Now, in cases involving a criminal statute that is generic, multipurpose, vague, unspecific, ambiguous, and/or written in the alternative, we must engage in "statutory reformulation" by "narrow[ing] the statute to be analyzed until it includes only the alternatives relevant to the case at hand." *Pandelli*, 635 F.2d at 538; *Gutierrez*, 2011-NMSC-024, ¶¶ 58-59. In effect, this modified approach recognizes that comparing in the abstract ambiguous facial statutory elements fails to provide requisite guidance to a court in determining legislative intent. *See State v. Franco*, 2005-NMSC-013, ¶ 14, 137 N.M. 447, 112 P.3d 1104 (explaining that "a statute that serves several purposes and has been written in the alternative may have many meanings and a wide range of deterrent possibilities" and that "[u]nless we focus on the relevant alternatives, we run the risk of misconstruing legislative intent" (internal quotation marks and citation omitted)). As this Court has explained:

> Analyzing statutory elements from the vantage point of the particular case before the court . . . enables a reviewing court to remain faithful to legislative intent to provide alternative means of prosecution against a single category of wrongdoers, and to avoid the confusion and injustice that may arise from looking at statutes in the abstract when each statute contains an element which the other does not.

*State v. Rodriguez*, 1992-NMCA-035, ¶ 10, 113 N.M. 767, 833 P.2d 244. Thus, in cases involving such statutes, a court considering a double jeopardy challenge must rely on the state's specific legal theory as the basis for establishing the proper elemental comparison in applying the *Blockburger* test. *See State v. Silvas*, 2015-

8

NMSC-006, ¶ 14, 343 P.3d 616; *State v. Gutierrez*, 2012-NMCA-095, ¶ 14, 286 P.3d 608 (explaining that the modified *Blockburger* approach "applies when one of the statutes at issue is written with many alternatives, or is vague or unspecific" and that "a reviewing court should look at the legal theory of the offense that is charged[] instead of looking at the statute in the abstract when comparing elements under *Blockburger*" (internal quotation marks and citation omitted)). Specifically, "we look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted." *State v. Ramirez*, 2016-NMCA-072, ¶ 18, 387 P.3d 266, *cert. denied*, ___-NMCERT-___ (No. S-1-SC-35949, July 20, 2016). Where "[n]either the indictment nor the jury instructions shed any light on the [s]tate's trial theory[,]" and/or to confirm our understanding of the state's theory, we may also look to the state's closing argument for evidence of the specific factual basis supporting its theory. *Id*. ¶¶ 17, 20; *Silvas*, 2015-NMSC-006, ¶¶ 19-21 (explaining that "[o]ur reading of the [jury] instructions is confirmed when we look to how the prosecutor asked the jury to apply [the] instructions" and reviewing the prosecutor's closing argument). By doing this, we may properly identify the appropriate "provisions" for comparison that are at the heart of the *Blockburger* test. *See Blockburger*, 284 U.S. at 304.

{11} If application of either approach to the *Blockburger* test "establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 1991-NMSC-043, ¶ 30; *see also Gutierrez*, 2011-NMSC-024, ¶ 60 (holding, after applying the modified *Blockburger* approach, that the defendant's armed robbery conviction subsumed his unlawful taking of a motor vehicle conviction and thus vacating his conviction for the lesser-included offense). If not, there is created a presumption that multiple punishment may be had, which presumption "may be overcome by other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31. However, we only turn to other means of determining legislative intent if the statutes in question "survive *Blockburger*." *State v. Branch*, 2016-NMCA-071, ¶¶ 24, 28, 387 P.3d 250, *cert. granted*, ___-NMCERT-___ (No. S-1-SC-35951, July 28, 2016).

**B.     Whether We Should Apply the *Blockburger* Strict Elements Test or Follow *Gutierrez*'s Modified Elements Approach**

{12} Because the parties disagree whether the CDM statute falls within the reach of *Gutierrez*, we begin by determining whether the CDM statute is the type of statute—i.e., generic, multipurpose, ambiguous, vague or unspecific, or written in the alternative—to which *Gutierrez* applies.

{13} The CDM statute provides that "[c]ontributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty,

which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." NMSA 1978, § 30-6-3 (1990). Our Supreme Court has explained that where "many forms of conduct can support" a particular statutory element, that statute "is a generic, multipurpose statute that is vague and unspecific, and we must look to the [s]tate's theory of the case to inform what" particular conduct is alleged in that particular case. *Swick*, 2012-NMSC-018, ¶ 25 (internal quotation marks omitted). Likewise, the presence of generic terms—such as "any unlawful act"—that allow for "numerous forms of conduct that could fulfill that requirement" necessarily render that statute subject to application of the modified *Blockburger* approach. *Branch*, 2016-NMCA-071, ¶ 26.

{14} We have little difficulty concluding that the CDM statute qualifies for application of the modified *Blockburger* approach. To begin with, the statute is a quintessentially generic, multipurpose statute, as has long been recognized in New Mexico case law. *See State v. Pitts*, 1986-NMSC-011, ¶ 10, 103 N.M. 778, 714 P.2d 582 (explaining that New Mexico courts have "recognized that the intent of the Legislature in enacting [the CDM statute] was to extend the broadest possible protection to children, who may be led astray in innumerable ways"); *State v. McKinley*, 1949-NMSC-010, ¶ 12, 53 N.M. 106, 202 P.2d 964 ("The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male

11

and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency."). Additionally, the statute is both vague and unspecific in that it criminalizes "*any* act" or the omission of "*any* duty" when that act or omission results in a child's delinquency. Section 30-6-3 (emphasis added). These generic terms make it possible for numerous forms of conduct to qualify as the requisite actus reus element of the statute. Thus, absent "statutory reformulation" vis-à-vis the State's legal theory in this case, there is no way to engage in the meaningful elemental comparison that is at the heart of the *Blockburger* test. *See Pandelli*, 635 F.2d at 538. In other words, until we identify which of Defendant's specific acts or omissions form the basis for the CDM charge, there is no way to know whether other conduct for which Defendant was criminally charged is separately punishable or if one charge subsumes the other.

**C.      Applying the Modified *Blockburger* Approach to the CDM Statute**

{15}      The jury was instructed that in order to convict Defendant of CDM, the State had to prove:

        1.      [D]efendant forced [Child] to engage in sexual acts and watch pornographic movies;

        2.      This caused or encouraged [Child] to conduct himself in a manner injurious to his morals, health or welfare;

12

3. [Child] was under the age of 18;

4. This happened in New Mexico on or about the 3rd day of May, 2013.

From this it is apparent that the State's theory of the "any act" element of CDM was Defendant's forcing Child "to engage in sexual acts and watch pornographic movies[.]" *See* UJI 14-601, n.2 NMRA (requiring a description of the act or omission of the defendant as part of the first element). Thus, under its theory as articulated in the jury instruction, the State had to prove that Defendant forced Child to both engage in sexual acts *and* watch pornographic movies in order to convict Defendant of CDM.

{16} While it used different terms in the CDM instruction, the State does not dispute that "sexual acts" refers to the CSCM or that "watch pornographic movies" is the same as unlawful exhibition of motion pictures. Importantly, the State points to no alternative act or acts that could serve as the basis for proving the "any acts" element of the CDM charge. *See Swick*, 2012-NMSC-018, ¶ 25 (explaining that even where one must draw an inference from arguably vague charging documents and jury instructions, "a prosecutor should not be allowed to defeat the constitutional protections afforded by the double jeopardy clause by clever indictment drafting" (alteration, internal quotation marks, and citation omitted)). The State also proffered no additional testimony or evidence to prove CDM than it did to prove CSCM and unlawful exhibition of motion pictures. *See id.* ¶ 26.

13

{17}   The State's only argument that Defendant's multiple convictions survive a modified *Blockburger* analysis is that the CDM statute contains an element that neither the CSCM nor unlawful exhibition statutes contains—namely that Defendant's acts "caused or encouraged [Child] to conduct himself in a manner injurious to his morals, health or welfare"—meaning that the statutes are not subsumed within each other. However, the State's argument ignores that in order for a statute not to be subsumed within another, *each* statute must require proof of a fact which the other does not. *See Blockburger*, 284 U.S. at 304 (explaining that "the test to be applied to determine whether there are two offenses or only one[] is whether each provision requires proof of a fact which the other does not"). While it is true that the CDM statute requires proof of an additional element, neither the CSCM nor unlawful exhibition statute requires proof of anything more than what is required to prove CDM as charged in this case.[1] *Cf. State v. Ramirez*, 2016-NMCA-072, ¶¶ 18, 23-24, (explaining that the aggravated assault statute, NMSA 1978, § 30-3-1(B) (1963), and the child endangerment statute, NMSA 1978, § 30-6-1(D) (2009), each requires proof of something the other does not, thus concluding that the statutes

[1]*Trevino* is distinguishable because there our Supreme Court applied the pre-*Gutierrez* strict *Blockburger* test and concluded that the generic CSCM statute requires proof of an additional element—an unlawful sexual touching—that the generic CDM statute does not. *See Trevino*, 1993-NMSC-067, ¶¶ 5-6.

14

survived the modified *Blockburger* test), *cert. denied,* ___-NMCERT-___ (No. S-1-SC-35949, July 20, 2016). Because the jury could—and, indeed, did—convict Defendant of CDM based on nothing more than the same evidence used to convict Defendant of CSCM and unlawful exhibition of motion pictures, we hold that Defendant's conviction for CDM as charged in this case violates double jeopardy. We reverse and remand with instructions to vacate Defendant's CDM conviction.

## II.     Whether the District Court Committed Fundamental Error in Instructing the Jury

{18}     Defendant challenges his convictions for (a) unlawful exhibition of motion pictures to a minor and (b) CSCM based on the jury instructions given by the district court. Because Defendant failed to object to the instructions, we review his challenges for fundamental error only. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. . . . If not, we review for fundamental error." (citation omitted)). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "An error is fundamental when it goes to the foundation or basis of a defendant's rights." *State v. Anderson*, 2016-NMCA-007, ¶ 8, 364 P.3d 306 (internal quotation marks and citation omitted), *cert. denied,*

15

2015-NMCERT-012 (No. A-1-CA-35591, Dec. 7, 2015). "We will not uphold a conviction if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* (internal quotation marks and citation omitted).

{19} In instances of claimed instructional error, we seek to determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted). "Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Anderson*, 2016-NMCA-007, ¶ 9 (internal quotation marks and citation omitted). "The propriety of jury instructions given . . . is a mixed question of law and fact[,]" which we review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

**A.      The Unlawful Exhibition of Motion Pictures to a Minor Jury Instruction Was Deficient**

{20} Defendant argues that the district court fundamentally erred by failing to properly instruct the jury regarding what it had to find in order to convict Defendant of unlawful exhibition of motion pictures to a minor. We agree.

{21} NMSA 1978, Section 30-37-3 (1973) provides, "It is unlawful for any person knowingly to exhibit to a minor . . . a motion picture, show or other presentation

16

which, in whole or in part, depicts nudity, sexual conduct or sado-masochistic abuse and which is harmful to minors." Because there is no uniform jury instruction that provides the essential elements of this offense, the district court was required to give an instruction that "substantially follow[s] the language of the statute" in order to be deemed sufficient. *State v. Doe*, 1983-NMSC-096, ¶ 8, 100 N.M. 481, 672 P.2d 654; *State v. Gunzelman*, 1973-NMSC-055, ¶ 28, 85 N.M. 295, 512 P.2d 55 (explaining that "[w]hen the terms of the statute itself define [an element of the crime], then an instruction which follows the words of the statute is sufficient"), *overruled on other grounds by State v. Orosco*, 1992-NMSC-006, ¶ 7, 113 N.M. 780, 833 P.2d 1146. Following the language of Section 30-37-3, we discern the following elements that together constitute the offense of unlawful exhibition: (1) The defendant knowingly exhibited a motion picture, show or other presentation; (2) The exhibition was to a minor; (3) The motion picture, show or other presentation depicts, in whole or in part, nudity, sexual conduct or sado-masochistic abuse; and (4) The motion picture, show or other presentation is harmful to minors. In other words, a person who knowingly exhibits to a minor a motion picture containing nudity cannot be convicted under Section 30-37-3 absent an additional finding that the motion picture was "harmful to minors." Mere depiction of nudity alone is not enough.

17

{22}   Additionally, the Legislature specially defined the terms "nudity" and "harmful to minors" as used in the Sexually Oriented Material Harmful to Minors Act, of which Section 30-37-3 is a part. *See* NMSA 1978, § 30-37-1 (1973) (defining terms "[a]s used in this act"). "[N]udity" is defined as "the showing of the male or female genitals, pubic area or buttocks with less than a full opaque covering, or the depiction of covered male genitals in a discernibly turgid state[.]" Section 30-37-1(B). "[H]armful to minors" is defined as:

> [T]hat quality of any description o[r] representation, in whatever form, of nudity, sexual conduct, sexual excitement or sado-masochistic abuse when it:
>
> (1)   predominantly appeals to the prurient, shameful or morbid interest of minors; and
>
> (2)   is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and
>
> (3)   is utterly without redeeming social importance for minors[.]

Section 30-37-1(F). Neither definition was provided to the jury in this case. While the failure to give a definitional instruction typically does not rise to the level of fundamental error, in some cases it does. *See State v. Mascareñas*, 2000-NMSC-017, ¶¶ 20-21, 129 N.M. 230, 4 P.3d 1221 (holding that the district court fundamentally erred by failing to include a definition of "reckless disregard" in a case where failure

18

to provide the definitional instruction "had the potential effect of confusing the jury as to the proper standard of negligence to apply"); *Anderson*, 2016-NMCA-007, ¶¶ 8-19 (holding in a case involving a claim of self-defense that there was fundamental error where the district court failed to provide the jury with the "no-retreat" instruction because there was evidence to support the instruction and the jury was "misdirected" by the instructions issued). Importantly, failure to give a definitional instruction when the term being defined "has a legal meaning different from the commonly understood lay interpretation of [the term]" may result in jury confusion that could place the verdict in doubt. *Barber*, 2004-NMSC-019, ¶¶ 21-22. In such instances, "we must place all the facts and circumstances under close scrutiny to see whether the missing instruction caused such confusion that the jury could have convicted [the d]efendant based upon a deficient understanding of the legal meaning of [the term in question] as an essential element of the crime." *Id.* ¶ 25.

{23}     The jury in this case was instructed that in order to convict Defendant of this offense, it had to find in pertinent part:

1.     [D]efendant knowingly showed or exhibited motion pictures to [Child];

2.     The motion pictures depicted nudity and/or sexual conduct which is harmful to minors; [and]

3.     [Child] was under the age of eighteen[.]

19

The proffered instruction is deficient in at least two respects. First, it fails to identify as a separate element that the motion picture "is harmful to minors" as we have concluded the statute requires. The phrase "which is harmful to minors" contained in the second paragraph of the instruction arguably modifies only "sexual conduct" and, at best, may also modify "nudity." But the requisite finding a jury must make in order to convict is that the exhibition prohibited by the statute, here a motion picture, is harmful to minors. *See* § 30-37-3. Thus, as instructed, the jury could have convicted Defendant for merely exhibiting to Child a motion picture that "depicted nudity" without making an additional finding that the motion picture was "harmful to minors." Second, as previously noted the jury was not provided with the statutory definitions of "nudity" and "harmful to minors." In defining these terms, the Legislature, in effect, established a special standard by which to determine whether a criminal offense—as opposed to an exhibition that, while perhaps inappropriate and ill-advised, is not harmful—has been committed. Where a district court fails to adequately define the applicable standard necessary to support a finding of criminal activity and it cannot be determined whether the jury applied the correct legal standard and "delivered its verdict on a legally adequate basis[,]" fundamental error may exist. *Mascareñas*, 2000-NMSC-017, ¶¶ 8-13, 16, 21. We review the evidence in order to determine whether "under the facts adduced at trial, [an] omitted element

20

was undisputed and indisputable, and no rational jury could have concluded otherwise." *State v. Lopez*, 1996-NMSC-036, ¶ 13, 122 N.M. 63, 920 P.2d 1017 (internal quotation marks and citation omitted). If the evidence does not indisputably establish the missing element or elements, there exists fundamental error, and we must reverse. *See id.*

{24} The only evidence to support Defendant's conviction for unlawful exhibition of motion pictures was Child's testimony regarding what the movie Defendant showed him depicted. Child testified that there were women in the movie wearing "red" clothes "like . . . you wear outside[,]" that the women remained clothed, and that there was no one in the movie with the women. He explained that he did not like the movies "because they were very ugly" because they "showed . . . all of [the] parts . . . of the women." As he said "all of their parts[,]" Child, who was seated, made a circling hand gesture in front of his upper body. Child could not recall what the women in the movie were doing and provided no additional description of the contents of the movie. Critically, the State offered no other evidence establishing what the movie showed. While Detective Lara testified that he recovered a video—which he described as "pornographic" in nature—from Defendant's house and answered "yes" when the prosecutor asked him whether what he saw on the video was "consistent with what [he] had learned and expected to see from [his]

investigation," he provided no description of what was contained in the movie.[2] We also note that the State did not seek to show the jury the video Detective Lara recovered. *Cf. State v. Green*, 2015-NMCA-007, ¶¶ 6, 26, 341 P.3d 10 (affirming the defendant's probation revocation for violating the prohibition against pornography and sexually explicit material where images found on the defendant's computer were entered into evidence and which images this Court, like the district court, held to depict "sexual activity and/or physical contact with unclothed female genitals or buttocks").

{25}     It was the State's burden to prove beyond a reasonable doubt that Defendant exhibited to Child a motion picture, show or presentation that depicted "the male or female genitals, pubic area or buttocks with less than a full opaque covering" and which motion picture "(1) predominantly appeal[ed] to the prurient, shameful or morbid interest of minors; . . . (2) is patently offensive to prevailing standards in the adult community . . .; and (3) is utterly without redeeming social importance for minors[.]" Sections 30-37-1(B), (F) and 30-37-3. We simply cannot say that Child's

---

[2]Defendant argues separately that it was plain error for the district court to admit Detective Lara's lay opinion as to the pornographic nature of the movie he recovered from Defendant's house based on Detective Lara's failure to provide a description of the video's contents, i.e., because Detective Lara's testimony lacked a proper foundation. Because we reverse Defendant's conviction for unlawful exhibition of motion pictures for improper jury instructions, we do not address this argument.

testimony—or any other evidence in the record—indisputably establishes either of these elements. *Cf. Barber*, 2004-NMSC-019, ¶¶ 29-30 (explaining that even if the jury instruction was "defectively ambiguous without the definition of possession," the jury instructions as a whole—which required the state to prove that the defendant intended to transfer methamphetamine—cured the ambiguity because the jury could not have convicted the defendant of intent to transfer, which it did, without also finding that he possessed the drugs); *Lopez*, 1996-NMSC-036, ¶¶ 14, 17, 34 (explaining that despite the district court's omission of the mens rea requirement—an essential element—from the felony murder jury instruction, the element was indisputably established by the defendant's own testimony, thus no fundamental error existed); *Orosco*, 1992-NMSC-006, ¶¶ 1, 19-20 (holding that failing to instruct on the essential element of "unlawfulness" in two CSCM cases was not fundamental error because "under the undisputed evidence of unlawfulness in the cases and the facts upon which the juries relied to find that [the] defendants committed the acts, the juries themselves effectively determined the existence of the omitted element").

{26}     There exists a distinct possibility that the jury convicted Defendant (1) without finding all the required elements beyond a reasonable doubt—i.e., that the motion picture itself was "harmful to minors"—and (2) based on a misunderstanding of the applicable legal standard—i.e., by applying common understandings of the terms

23

"nudity" and "harmful to minors" rather than their statutory definitions. *See State v. Montoya*, 2013-NMSC-020, ¶ 14, 306 P.3d 426 ("In applying the fundamental error analysis to deficient jury instructions, we are required to reverse when the misinstruction leaves us with no way of knowing whether the conviction was or was not based on the lack of the essential element." (internal quotation marks and citation omitted)); *cf. State v. Reed*, 2005-NMSC-031, ¶¶ 53, 57, 138 N.M. 365, 120 P.3d 447 (explaining that even though the district court failed to give the "reckless disregard" definitional instruction specifically for the child abuse charge, the error was harmless because "[a] definitional instruction is not necessary if, as [a] matter of law, no rational juror could find that a defendant acted with less than criminal negligence"). We thus hold that the district court fundamentally erred in instructing the jury on the charge of unlawful exhibition of motion pictures to a minor and reverse Defendant's conviction on that count.

{27}     Whether the State may retry Defendant depends on whether there was sufficient evidence presented at trial to support a conviction under the erroneous instruction given at trial.[3] *See State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d

---

[3]Defendant develops no argument that the evidence was insufficient to convict him under the *erroneous* instruction. Rather, Defendant's sufficiency challenge analyzes the evidence in light of a properly given instruction, which has no bearing on our review. *See State v. Rosaire*, 1996-NMCA-115, ¶¶ 20-21, 123 N.M. 250, 939 P.2d 597 (explaining that we review "the evidence in light of the *defective* jury

930 ("We review [a d]efendant's [sufficiency of the evidence] claim under the erroneous instruction provided to the jury at trial."). "[O]ur review of the sufficiency of the evidence is analytically independent from the issue of the defect in the jury instruction." *Rosaire*, 1996-NMCA-115, ¶ 20. "We review sufficiency of the evidence on appeal from a highly deferential standpoint." *Dowling*, 2011-NMSC-016, ¶ 20. "The evidence is to be viewed in the light most favorable to the [s]tate, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *Id.*

{28}     As stated previously, the jury in this case was instructed that it had to find, among other elements that Defendant does not challenge, that Defendant exhibited to Child a motion picture that "depicted nudity and/or sexual conduct which is harmful to minors[.]" Child testified that the movie "showed . . . all of [the] parts . . . of the women" and that Child found the images to be "very ugly." Defendant himself concedes that Child's "description of what he viewed suggests . . . that he watched a video in which women exposed themselves fully" and that "lay jurors may consider 'harmful to minors' " material contained in mainstream movies that "contain very real depictions of violence and sexual conduct." Viewed in the light most favorable to the

instruction given below" and holding that "where the trial court errs by failing to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant under the erroneous jury instruction").

25

State, we conclude that the jury could infer from Child's testimony both that the movie "depicted nudity" and that the nudity depicted was "harmful to minors." Because there was sufficient evidence to convict Defendant of unlawful exhibition of motion pictures to a minor under the erroneous jury instruction, there is no bar to retrying him on that count. *See id.* ¶ 47.

**B.     CSCM Jury Instruction**

{29}     Defendant argues the district court committed fundamental error in instructing the jury regarding CSCM by failing to include as an essential element that Defendant's conduct was unlawful and provide the jury with the corresponding instruction on unlawfulness. The State argues that the "unlawful" element contained in UJI 14-925 NMRA, the uniform jury instruction for CSCM, need only be given "if the evidence raises a genuine issue of the unlawfulness of the defendant's actions." *Id.* Use Note 4. We agree with the State.

{30}     Our Supreme Court has held that it is not fundamental error to fail to provide the "unlawful" element of UJI 14-925 in a case where the element of unlawfulness is not "in issue." *Orosco*, 1992-NMSC-006, ¶ 10. To determine whether unlawfulness is "in issue," we consider "whether there was any evidence or suggestion in the facts, however slight, that could have put the element of unlawfulness in issue." *Id.* Where, for example, there is evidence that the touching at issue may have been "innocent

behavior such as the touching of the intimate parts of a minor for purposes of providing reasonable medical treatment to a child or nonabusive parental or custodial care[,]" the unlawfulness of the touching is in issue and the jury must be instructed accordingly. *State v. Osborne*, 1991-NMSC-032, ¶¶ 19-20, 31-33, 111 N.M. 654, 808 P.2d 654 (alteration, internal quotation marks, and citation omitted). However, where the state presents evidence that the defendant touched or fondled a child's intimate parts or genitals and there are no facts in evidence "to suggest that the touchings, if they occurred, might have involved the provision of medical care, custodial care or affection, or any other lawful purpose[,]" unlawfulness is not "in issue." *Orosco*, 1992-NMSC-006, ¶¶ 10, 11. That is because implicit in the jury's determination that the defendant committed a crime is a finding—based on the evidence in the case—that the defendant's conduct was unlawful. *See id.* ¶¶ 11-12.

{31}    Here, the jury heard from Child that Defendant (1) showed Child movies with women "showing . . . all of their parts," which movies Child found "ugly," (2) exposed his own penis to Child, *then* (3) touched Child's clothed penis with his hand and mouth. Despite all this evidence, Defendant argues that "[t]here was no context provided" and "no . . . evidence that the scenario was sexual." Critically, he fails to point to anything in the record, even something slight, that might suggest that Defendant's contact of Child's penis was lawful. *Cf. Osborne*, 1991-NMSC-032,

¶¶ 6-7 (describing the evidence of touching in that case and noting that the defendant "did not recall ever touching [the child's] bottom and said that while it was possible he might have touched her bottom at some point, it would not have been in an inappropriate manner or with an inappropriate intent"). Based on both the allegations against Defendant and the evidence adduced at trial, there was no reason for the jury to be instructed that it had to find Defendant's conduct "unlawful" because there was no basis upon which the jury could conclude that the touching was lawful. The jury's verdict thus must have been based upon Defendant's having touched Child as the evidence was presented, which necessarily incorporated a finding of unlawfulness. *Id.* We, therefore, hold that the district court did not fundamentally err by failing to instruct the jury with the "unlawful" element of UJI 14-925.

**III.    Whether Substantial Evidence Supports Defendant's Convictions**

{32}    Defendant argues that the State failed to present sufficient evidence to sustain his convictions for CDM, unlawful exhibition of motion pictures to a minor, and intimidation of a witness. Because we have already reversed and remanded Defendant's convictions for CDM and unlawful exhibition of motion pictures to a minor, we address only whether sufficient evidence supports his conviction for intimidation of a witness.

28

{33} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). Our review involves a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then "evaluate whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Our appellate courts "will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (alterations, internal quotation marks, and citation omitted).

{34} The jury in this case was instructed, in pertinent part, that in order to convict Defendant of intimidation of a witness, the State had to prove beyond a reasonable doubt that Defendant "knowingly intimidated and/or threatened [Child] with the

intent to keep [Child] from truthfully reporting to a law enforcement officer or any agency that is responsible for enforcing criminal laws information relating to the commission or possible commission of . . . [CSCM.]" Intimidation of a witness may be proven through circumstantial evidence, including the witness's testimony that he or she did not initially report an incident because the defendant had made a veiled threat and was present in the room when the report first could have been made. *In re Gabriel M.*, 2002-NMCA-047, ¶¶ 22, 24-26, 132 N.M. 124, 45 P.3d 64. Particularly in cases involving children, such testimony may be elicited by the use of leading questions. *See State v. Orona*, 1979-NMSC-011, ¶ 28, 92 N.M. 450, 589 P.2d 1041 ("Leading questions are often permissible when a witness is immature, timid[,] or frightened.").

{35}    Here, the State relied on the following exchange between the prosecutor and Child to support Defendant's conviction for intimidating a witness:

Q:    Did [Defendant] tell you not to tell anyone [what happened]?

A:    Yes.

Q:    Did [Defendant] tell you he would do anything if you told someone?

A:    I don't recall.

Q:    Do you remember telling the police officer that [Defendant] said he would take you far away and leave you there?

30

A: Yes, oh, yes, I do recall.

Q: Did [Defendant] tell you that?

A: Yes.

Q: Were you afraid of [Defendant]?

A: Yes.

Child also testified that he did not immediately tell his mother about the incident because Defendant was present, but that once Defendant was gone, Child then disclosed to his mother what Defendant did to him.

{36} Defendant contends that the prosecutor "simply spoon-fed [Child] the State's entire factual basis for intimidation of a witness[,]" thus diminishing "the evidentiary value of [Child's] testimony on the subject." Defendant argues that under *Orona*, the prosecutor's leading questions and Child's single-word affirmatory responses fail to provide sufficient evidence to support Defendant's conviction because the facts were contained only in the prosecutor's questions and thus were not evidence. *See Orona*, 1979-NMSC-011, ¶ 21 (explaining that "[d]eveloping testimony by the use of leading questions must be distinguished from substituting the words of the prosecutor for the testimony of the witness"). *Orona* is distinguishable, and Defendant's reliance thereon is misplaced. In *Orona*, defense counsel repeatedly objected to the prosecutor's use of leading questions of the complaining witness. *Id.* ¶¶ 15-18. While

31

the district court initially sustained the objections, it eventually permitted the witness to be led. *Id.* ¶ 19. Thus, on appeal the defendant made an evidentiary—not sufficiency—challenge and argued that the district court had abused its discretion in allowing the prosecutor to lead the witness, an argument with which our Supreme Court agreed under the particular facts of that case. *Id.* ¶ 30.

{37} Here, however, Defendant neither objected to the prosecutor's leading questions nor challenges on appeal the admissibility of the evidence elicited, yet complains that the unobjected-to testimony is insufficient to support his conviction. Defendant fails to cite any authority suggesting that a child-witness's responses to a prosecutor's arguably leading questions, which garnered no objections, must be disregarded in a sufficiency challenge, and we, therefore, assume none exists. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). Additionally, to the extent Defendant's argument—that the prosecutor's use of leading questions "diminishes the evidentiary value of [Child's] testimony"—invites us to reweigh the evidence, we decline to do so. *See State v. Trujillo*, 2002-NMSC-005, ¶ 28, 131 N.M. 709, 42 P.3d 814 ("We will not reweigh the evidence or substitute our judgment for that of the jury."). We note that much of Child's testimony was developed through leading

32

questions—likely owing to the fact that Child frequently expressed confusion upon being asked broad, open-ended questions—and that Child often could not "recall" things when initially asked but eventually remembered when the prosecutor posed the question slightly differently. Thus, Child's exchange with the prosecutor regarding the intimidation charge was typical of his testimony throughout and established not only that Child remembered telling police that Defendant threatened Child but more importantly a factual basis upon which the jury could conclude that Defendant, in fact, threatened Child.

{38}     We conclude that from the record of Child's testimony, the jury could reasonably infer that Defendant intimidated Child with the intent to keep him from reporting the incident to law enforcement. Thus, we affirm Defendant's conviction for intimidation of a witness.

**IV.     Whether the District Court Committed Plain Error by Admitting Certain Expert Testimony**

{39}     At trial, the State's first witness was Sylvia Aldaz-Osborn. Over Defendant's objection, the district court qualified Aldaz-Osborn as an expert in forensic interviewing. Aldaz-Osborn was allowed to watch Child's videotaped deposition as it was played to the jury and was then questioned by the prosecutor. The prosecutor asked Aldaz-Osborn to, based on her training and experience as a forensic interviewer, describe in what sort of ways Aldaz-Osborn has seen children react to

trauma. Asking if she could use the video of Child's deposition as an example, Aldaz-Osborn stated, "When you saw [Child] going like this[, biting his lips,] that's sort of like he's nervous to answer. . . . I would see that as getting nervous." The prosecutor then asked, "When children are interviewed, if they're uncomfortable and nervous, do they, in your experience, . . . develop certain coping mechanisms?" Aldaz-Osborn answered, "Yes, ma'am, they do." Asked to describe what sorts of things she has observed and invited to use Child's videotaped deposition as an example, Aldaz-Osborn stated, "Well, I've seen what [Child] did with his mouth in going [(unknown gesture)], or maybe they cry. Sometimes I've even seen them laughing because they're so nervous. Sometimes they won't sit down." The prosecutor then asked, "Do they cope in certain ways, or have you seen them cope in certain ways, when they don't really want to relive what happened to them?" Aldaz-Osborn responded, "Yes, ma'am, I have." When the prosecutor asked, "And what did you observe in the video with [Child]?" Aldaz-Osborn answered, "Him trying to recall incidents and saying he didn't remember."

{40} While Defendant objected to the district court's qualification of Aldaz-Osborn as an expert witness in forensic interviewing, he failed to object to the admissibility of any of her specific testimony. On appeal, Defendant does not argue that the district

34

court abused its discretion in qualifying Aldaz-Osborn as an expert witness[4] but instead contends that the district court erred by admitting Aldaz-Osborn's testimony regarding "the alleged meaning behind [Child's] observable behavior" in Child's videotaped deposition. Conceding that he failed to object to the specific aspects of Aldaz-Osborn's testimony of which he now complains, Defendant acknowledges that we review this part of his challenge for plain error only. *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (explaining that where the defendant did not preserve an objection to the admission of expert testimony, courts review "for plain error").

{41} Plain error is an error that "affects a substantial right" of the accused. Rule 11-103(A) NMRA; *Montoya*, 2015-NMSC-010, ¶ 46. "To find plain error, [an appellate court] must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). "In determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *State v.*

---

[4]Defendant's two passing references in his briefs to defense counsel's objections at trial and rote recitations of the "abuse of discretion" standard of review for preserved arguments are insufficient to warrant further consideration by this Court. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031(explaining that appellate courts are under no obligation to review unclear or undeveloped arguments).

*Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (omission, internal quotation marks, and citation omitted). Where there exists "ample evidence outside of [the complained-of expert] testimony to support the jury's finding of guilt[,]" it is not plain error to admit such testimony. *Montoya*, 2015-NMSC-010, ¶ 49.

{42} Defendant primarily complains about Aldaz-Osborn's testimony regarding Child's inability to remember certain details during his deposition, arguing that Aldaz-Osborn's "expert testimony gave the jury an unfounded basis to reach an inference contrary to common sense[,] i.e., that a claimed lack of memory is indicative of a traumatic memory." Defendant points to "at least ten instances where [Child] stated . . . he could not recall something[.]" However, as Defendant acknowledges, the vast majority of those instances related to the details of what the videos Defendant exhibited to Child showed, and we have already held that Defendant's unlawful exhibition conviction must be reversed. With respect to the evidence supporting Defendant's convictions for CSCM and intimidation of a witness, we conclude that Child's testimony alone supports the jury's findings of guilt. While it is true that it is plain error to allow an expert on direct examination to "repeat to the jury [a] complainant's statements, made to the expert during [an] evaluation," because such testimony "amounts to an indirect comment on the alleged victim's credibility[,]" that is not what happened in this case. *State v. Lucero*, 1993-

NMSC-064, ¶ 19, 116 N.M. 450, 863 P.2d 1071. Here, the jury heard Child's statements about what happened directly from Child through his videotaped deposition. The jury had the independent opportunity to observe Child's behaviors—including biting his lips—and the full context in which he could not remember certain details. As discussed in the previous section, while Child initially could not recall Defendant's threat to him, he displayed clear and immediate recollection of the threat as soon as the prosecutor asked a follow-up question and then confirmed that Defendant, indeed, had so threatened him. Child also had no difficulty recalling and never hesitated in affirmatively answering questions about whether Defendant had touched Child's penis. The only time Child stated that he could not recall something related to the touching was in response to the prosecutor's question, "Did [Defendant] touch your part over your clothes or under your clothes?"[5] But Child definitively and repeatedly stated that Defendant had touched Child's penis, making Aldaz-Osborn's statement that she saw Child "trying to recall incidents

[5]Child's later testimony clarified that the touching occurred "outside" of his clothes and was not skin-to skin. As such, the district court instructed the jury as to CSCM in the third degree rather than CSCM in the second degree as the State had originally charged in order to conform to the evidence elicited at trial. *Compare* NMSA 1978, § 30-9-13(C) (2003, amended 2004) (providing that CSCM in the third degree "consists of *all* criminal sexual contact of a minor" (emphasis added)), *with* § 30-9-13(B) (providing that CSCM "in the second degree consists of all criminal sexual contact of the *unclothed* parts of a minor" (emphasis added)).

37

and saying he didn't remember" irrelevant to the jury's determination that Defendant was guilty of CSCM. We thus hold that the admission of Aldaz-Osborn's testimony did not affect a substantial right of Defendant or create grave doubts concerning the validity of the CSCM and intimidation verdicts, and, as a result, no plain error warranting reversal exists.

**CONCLUSION**

{43}    For the foregoing reasons, we affirm Defendant's convictions for CSCM and intimidation of a witness, reverse Defendant's convictions for CDM and unlawful exhibition of motion pictures to a minor, and remand for further proceedings in light of this opinion.

{44}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**TIMOTHY L. GARCIA, Judge**